Our next case for argument is Stavrianoudakis v. United States Fish and Wildlife Service. I understand the government on the Appalachia side is sharing time. Mr. Weisslau? Yes, Your Honors. Good afternoon, Your Honors, and may it please the Court. My name is Daniel Weisslau with Pacific Legal Foundation, and I represent the plaintiff appellant in this matter. I'd like to reserve three minutes for rebuttal. I'd like to begin with a simple statement that frames the standing issue in this case. It is illegal in the state of California to practice falconry without a government license, and it is impossible to obtain a government license without agreeing to warrantless, unannounced searches of your property. I represent, among others, Master Falconer Peter Stavrianoudakis, who every June is required to submit to the state of California a written statement that agrees that his home is subject to unannounced searches. The home where he lives with his wife, Catherine, who's also a plaintiff in this matter, and an eight-year-old Aplomado falcon named Ares. The district court below said that Peter and his co-plaintiffs lack standing because this right of entry condition, the warrantless search condition, works no injury on them for Article III purposes. For two salient reasons, the court was incorrect to rule that way. First, falconers are injured every time that they have to agree to the right of entry condition and every time that their properties are searched. And second, nearly a century of Supreme Court case law sets out that conditional licensing schemes work, quote, constitutionally cognizable injuries, in the words of Kuntz v. St. John's River Water Management District, and those injuries accrue at the time that the condition is demanded. They do not depend on whether a conditioned license is issued. Counsel, if licensing comes from the state of California, how is it that this applies to the U.S. Fish and Wildlife? There are three main reasons, Your Honor. The first is that the state regulations, 14 CCR Section 670, incorporates by reference expressly the federal regulations in 50 CFR Section 21.82. Second, the federal regulations that are referenced actually require the state of California and all other states that implement its licensing program to be at least as restrictive as the federal regulations. Is there some certification that happens every year? I understand that California was certified to issue these licenses in 2013, I think it was. But is there like a yearly certification process that happens? Yes, Your Honor, there is. In fact, every June, falconers in California are required to renew their licenses. Oh, I don't mean the falconers themselves. What I mean is the state, each individual state, do they have to somehow, again, sort of re-up with the federal government, indicating that their programs are consistent with federal regulations? That is, I believe, at the discretion of the federal government to, if it finds that a state licensing program has become noncompliant with the federal scheme, then they can do a review of the state licensing scheme and either strike it down and become the default licensing authority for falconers in that state or take away that state's licensing power altogether. And so if that were to happen in this case, Your Honors, and the reason that my clients pursue relief against the state and the federal government is kind of because of a catch-22 that they would have found themselves in had they sought relief against only the state defendant or the federal defendant. Had they sought relief only against the state defendant, the state of California would say, well, our hands are tied. The federal regulations require us to have this warrantless search power and make you agree to it. And we're implementing federal regulations under the Migratory Bird Treaty Act authority, not merely under our state authority. If my clients have sought relief against only the federal government, well, the federal government would have said what they've said here, which is that, well, we've delegated that authority to the states. It's the states that are searching you. And for that reason, Your Honor, well, we brought suit against both the state and the federal governments because these licensing restrictions are really intertwined. And if you look at the state's adoption of the federal regulations, you can see this, because some of the state regulations outline some of the objects of the searches of these. And in other places, the objects of the searches are defined by the federal regulations that are incorporated. And this goes in some measure to the government's argument that, well, we can't know if the search of any particular falconer's properties is going to be unreasonable under the Fourth Amendment, and therefore they don't have standing. That's not the case, Your Honor, because as we make out— Are you contending that all administrative warrantless searches are unconstitutional? No, Your Honor. So you would agree that under certain types of warrantless searches against your clients, they would be constitutional? I mean, we have—just to give you a minute to think. You know, we have warrantless administrative searches all the time when we go through the airports at TSA, OSHA, when people are on supervised release. There are all sorts of administrative warrantless searches. The question is, are they unreasonable because that's the constitutional standard? So tell me what your argument is that all warrantless searches of your clients are unreasonable constitutionally. Yes, Your Honor. The government's arguments below are essentially that this is a closely regulated industry and that, therefore, these searches fit within the closely regulated industry exception to the warrant requirement. Our position is that— It's not closely regulated? That's precisely opposite of what you're saying. I understand, Your Honor. And there are a great many regulations that apply to Falconers. However, the closely regulated industry doctrine, if you look at the line of cases in the Supreme Court and the lower courts, is really limited to closely regulated commercial activities and dangerous activities. This is a doctrine that was developed for nuclear power plants, for underground mining, as the Supreme Court said in Donovan v. Dewey, or in Colonnade Catering Company, the liquor industry, the firearms industry. It doesn't apply to recreational activities.  I'm sorry, Your Honor? What's your best case? That it doesn't apply to recreational industries. It applies to the boating industry, for example. It applies to all sorts of recreational activities. Well, Your Honor, the closely regulated industry doctrine itself does not apply to recreational industries. When we're talking about commercial fishing, that's a commercial enterprise. And, in fact, the most recent case to consider fishing came out of the Fifth Circuit. And, in that case, a Mexican Gulf fishing company, the Fifth Circuit said, well, charter fishing boats subject to warrantless tracking through the installation of GPS devices are actually not members of a closely regulated industry. In fact, the Fifth Circuit wasn't convinced that commercial fishing was, although I understand that this— Well, I was actually thinking about personal fishing when I fish in Montana, and they have a right to examine how many fish I've taken without getting a warrant. Yes, Your Honor. In those cases, what the courts do is look at the program of warrantless searches that's being implemented. And then the government must prove that the administrative search exception applies. But it has to prove that in a programmatic sense, Your Honor. What the government is arguing here is that because any falconer might be searched and because a search might be reasonable, say, under the open fields doctrine, or under a warrant, or under exigent circumstances, that, therefore, my clients have no standing to bring a case. And it's hard to know whether it's an unreasonable search or not in the absence of a search, isn't it? Not in a programmatic sense, Your Honor. Because as the Supreme Court said in City of Los Angeles v. Patel, when you do facial analysis of a law that imposes warrantless searches and seizures, what you look at are the warrantless searches and seizures that are actually authorized by that law. If the officers might sometimes get a warrant or rely on exigent circumstances, those searches are not searches that are authorized by the law itself. They're authorized by the warrant. They're authorized by exigent circumstances. Isn't your problem here, if you're making a programmatic argument, isn't your problem here that you can't show a program of conducting these searches that your client doesn't like? Well, the program we're challenging is the actual regulatory scheme that's imposed. No, I understand that. But, I mean, there can be laws on the books that people don't like that aren't ever enforced. And I don't know that the record shows that, but it shows that it doesn't get enforced very often. And so how do we – again, coming back to you, you're trying to make a programmatic argument, and I'm not seeing much of a program of these searches being conducted. Well, Your Honor, when I talk about program, I am talking about the regulatory scheme, not about the evidence of existing searches. However, it is stipulated in this case, and the government has admitted, that these searches against licensed falconers are ongoing and being executed against them. And at this stage, at the motion to dismiss stage, plaintiff's complaint, the factual allegations in our complaint are to be taken as true. And we do, in fact, allege that these searches are ongoing. But not only are there impending injuries in the style of additional future searches, and we have alleged specific historic searches, but the impending injury of being required to surrender your Fourth Amendment rights in order to get a license. I think that's a totally separate issue. I think you have an easier case on the unconstitutional conditions argument that you've made. But as to the unannounced searches directly, my understanding of the record is you've got three or four or five instances of searches, some of them quite dated. So what is your best authority for that? That's more than speculative injury. Yes, Your Honor. This is more than speculative in the sense that the injury suffered by corporate shareholders in Meehlin v. Weber, in this Court's most recent standing case, had more than a speculative injury. In Meehlin v. Weber, this Court considered whether a gender quota for corporate boards could be challenged by shareholders who may be required in the future to vote in a particular way. Now, the shareholders in Meehlin v. Weber could not be punished for voting in a particular way. Unlike my clients, Falconers, who face criminal and civil penalties, including the loss of their birds for refusing warrantless searches of their properties. In Meehlin v. Weber, there was no specific board vote that was being pointed to in that case. However, here we know that every single June, our clients are going to have to renew their licenses and they're going to have to sign a certification that they agree to warrantless searches of their properties. The main point in Weber, in Meehlin v. Weber, was that corporate board shareholders were the persons who were the target of this legislation. They were the people whose conduct was to be influenced. And that's also the case here, Your Honors, where licensed Falconers are a narrow category of people who are specifically singled out and treated differently and targeted for these warrantless searches and seizures because of that. And it's because of the activities that they engage in, falconry. And that makes them particularly susceptible and likely to being searched again in the future. Now, this case has a long procedural history. We filed our complaint several years ago, and it's not surprising that my clients have not been searched during the pendency of this, given that we've been arguing standing for so long. Do you have allegations that they were searched close in time before you filed? Well, Your Honor, within a little bit over two years, two members of American Falconry Conservancy, one of the plaintiffs in this case, had their properties searched. But not your clients. They're members of American Falconry Conservancy. That's correct, Your Honor. I understand that. Yes. I mean, I guess I'm struggling with – here's a quote from one of our prior cases. The mere existence of a statute which may or may not ever be applied to the plaintiffs is not sufficient to create a case or controversy within the meaning of Article III. So the way I understand this regulatory scheme, you can do one of these unannounced searches without any justification just because, you know, you've got somebody who is part of the falconry program and has a license. So if you don't need a reason and you're not able to show a pattern of that happening, why doesn't that quote that I just read apply here? Just because the statute exists doesn't mean that it's actually going to be applied. Yes, Your Honor. The issue here is that, as I said, just as Meehlin v. Weber said, that falconers are within that specific and narrow category of persons who are specifically targeted for these types of searches. And that does make them more likely to be searched. Now, on the other hand, the problem with the theory of standing pressed by the defendants and that was relied on by the court below is that it requires my clients to predict when an unannounced search of their property will take place. But the last search then happened, I guess it would have been six years ago, right? 2016, 17? Is that right? 2017, Your Honor. Okay. So to Judge Forrest's question, is there some fear that this is going to happen again? Yes, Your Honor, and that's because my clients are subject to these warrantless unannounced searches. But I'd like to take you, Your Honors, to the text of the Fourth Amendment itself. Because the Fourth Amendment is not a part of the Constitution that merely remedies past violations of rights. What the Fourth Amendment guarantees is the right to be secure in your home against unreasonable searches and seizures. And because of the imposition of the right of entry condition, because of the warrantless searches that are able to take place in Falconers' homes, they no longer have the right of security in their homes. That right was taken from them at the time when they sought licensure. Did we not care at all about the fact that the regulation isn't aimed at anybody's home? It's aimed at where they have their Falcons, and it's up to the licensee person to choose where they have their Falcons and that they put it in their home, you know, sort of respondeat superior? I'm sorry, I got that. Res ipsa locator is what I mean, right? Like you just opened yourself up to the problem. I understand that position, Your Honor. However, whether our clients keep their Falconers in their homes or outdoors, they would still be subject to unreasonable searches, and the reason for that is Well, why do you say it's an unreasonable search if there's a regulatory scheme that has been so far unchallenged that falconry is regulated? I mean, I'll leave the question at that. Yes, Your Honor, we're prepared to argue on the merits below that the closely regulated industry doctrine does not apply to the practice of falconry, which itself is a regulated industry and poses no externalities that are particularly dangerous on anyone. Basically, your challenge is to the entire regulatory scheme, which is not part of this case. Yes, Your Honor, our challenge is to the regulatory scheme, the authorization of Just one person. No, Your Honor, yes, is to the warrantless searches and seizures. But I'd like to respond and return to the earlier question because there are two ways that you can store your falcons under the federal regulations my clients challenge. The first one is indoors in a muse in a cage in your home, which is what most falconers do, what most people do who own birds. The other way, however, that you're required to keep falcons if you keep them outdoors is in a weathering area, and a weathering area is required to be in a full enclosure. Now, the argument here from the defendants is essentially that, oh, well, government can search in an open field without violating Fourth Amendment rights. But these specific regulations that we challenge, Your Honors, actually authorize entry into facilities. They authorize inspection of records. And the open fields doctrine has never been interpreted to authorize the entry into physical structures. In fact, going back to the 1967 case of C v. City of Seattle, the Supreme Court has recognized a reasonable expectation of privacy, not only in dwellings but also in non-residential structures as well. And the United States v. Dunn case that's relied on for the open fields doctrine often actually drew the line at physical structures. So no matter how this authorization for searches is read, it's unconstitutional. I'll reserve my time for rebuttal. Thank you. All right. Mr. Butterfield, you're going first. Yes, Your Honor. Good afternoon, Your Honors. John Butterfield for California Department of Fish and Wildlife, Director Bonham. Appellees have agreed to a split of oral argument time, so I'll reserve five minutes for my colleague representing the United States. In order for appellants to have standing here, they must allege a concrete and particularized injury that is certainly impending. And as the district court found, that is a standard they cannot meet. No individual appellant has been the subject of an unannounced search for at least 30 years. Appellants allege that members of their association have been searched more recently, but they offer no evidence of future impending searches. Instead, appellants profess concern about a threat of a search at some unknown future time. But that concern rests on a chain of speculative possibilities about how California officials might exercise their investigatory discretion. And as the Supreme Court held in Clapper, such a speculative chain of possibilities does not establish a certainly impending injury in fact. So is California saying that they're never going to search their homes? The record reflects that California officials have indicated that this unannounced inspection provision is used, but California makes no representations about how frequently. So you can see that California will be using this in the future? California may, in its investigatory discretion, at some point in the future, choose to conduct an unannounced inspection of a falconer. It could be today. It could be today. It could be... Unlikely. It does seem unlikely, Your Honor. It could be many years in the future. And it might not be any of these appellants or a member of American Falconry Conservancy. And that's critical. And California's not pushing on the importance of this inability to demonstrate injury in fact to be dogmatic. It's important because appellants have brought a Fourth Amendment challenge to our falconry inspection regulatory regime. So further factual development would be critical before the district court could rationally be asked to evaluate the reasonableness of a falconry inspection. So I assume that the state's position is that it has the right to conduct warrantless searches under this regulatory scheme. Correct? That will certainly be our argument at the merits, Your Honor. Okay. Why do you need consent? Well, we need consent because it's required by the federal regulations. And California's regulatory scheme must be at least as restrictive as the federal regulations in order to be delegated the power to issue falconry licenses. And California's choice to set up consent may be a merits issue. But it doesn't change the fact that there's no standing here because appellants don't have an injury in fact that they can point to. And that injury and that previous search that they could point to would be critical in assessing the reasonableness of that search, which consent might factor into, Your Honor. I don't understand the no injury with regard to the unconstitutional conditions claim because my understanding is the injury in that context is having to choose to waive your Fourth Amendment rights or forego a license. So that's happening every year when they have to renew their permits, right? So why do they not have an injury in that context? Well, first of all, Your Honor, appellants have never been denied a license. They are granted a license. They make no allegation that they've actually suffered the loss of a license. It's not the loss of a license. It's having to choose to submit to the requirement that they contend is unlawful. So when they offer the acknowledgement each year to receive their license, that doesn't work an injury to appellants. The only possible injury that it could work is when the search later on occurs. And so this is a distinction between the Kuntz cases and the Nolan Dolan test where the condition is applied as a part of the permit. And so the injury happens at that exact moment. Whereas here, any injury that could occur would happen later on following a chain of potential investigatory discretion by California. There's no guarantee that by signing the acknowledgement, appellants will ever actually be searched. And so that's a key distinction between the Kuntz cases and the situation here. The other distinction is that in a Nolan Dolan situation, a Fifth Amendment taking case as the appellants rely on, there's been complete factual development. The court can look at what the zoning authority or the permitting authority said, what options were given before the permit with the conditions were offered. But why couldn't we just send this back to the district court, say, yes, they have standing, and then that record be developed? Well, there's no record to be developed, Your Honor, because the appellants don't allege that there's been any searches. If they have more searches, they could have added those to their complaint. This is their second amended complaint, and their first amended complaint was dismissed for the same reason. So they had the opportunity to further develop the record about what, if any, impending searches were coming, and they didn't do so. Mr. Weisslau talked in his briefing today about this court's recent decision in Milland, and I just wanted to touch on that briefly. Milland analyzed an important factor in the standing question, which is whether a litigant is the object of a regulation. And appellants attempted to draw parallels to their situation here, but there's a key distinction. Milland's object of analysis is separate from whether a plaintiff can demonstrate injury in fact. In Milland, this court had already determined that if the plaintiff was the object of the regulation, he had demonstrated an injury in fact under this court's moderate mechanical line of cases. That's not the case here. As the district court found, what appellants are missing is not whether they are the objects of California's falconry regulations. They obviously are. It's whether they can allege an injury in fact. And as I mentioned, they haven't been searched for years, and they have no evidence of impending searches, so they're unable to satisfy that critical element of the standing analysis. Appellants' reply brief also relied heavily on the Supreme Court's decision in City of Los Angeles v. Patel, brought up in discussion with opposing counsel. And while we agree that Patel preserved the ability of litigants to bring facial challenges to statutes based on the Fourth Amendment, the Supreme Court did not in any way relax Article III standing requirements for such a challenge. In fact, in Patel, the court did not even have to address the standing question because the motel owners had been routinely searched, and the city stipulated that searches were ongoing and would occur in the future. And that's different here, where the state has made no such stipulation. We have, as I mentioned here, said that these searches may be used at some point in the future rather than the distinct and clear stipulation that was made in Patel. Isn't that just an illusory contention? We might do this in the future. There's no assurance that we'll do it in the future, but we might do it in the future. Are you really saying that you're going to do it at some point? If you're not going to do it, then take it off. But you're not going to take it off because the feds require you to do it, right? Correct, Your Honor. And I think we are saying that we might do it in the future. And in that case, at that point, whoever is searched would have standing to bring a challenge if they want to. But we're here before that has happened. And so if we send this back to the district court, the district court will be asked, is this a reasonable search with no search to look at to determine whether it's reasonable? And so that's why I think that that injury in fact being certainly impending or having occurred is so important in this context. I think this case more closely resembles Thomas v. Anchorage Equal Rights Commission, where the litigants in that case had failed to present a justiciable controversy. And this court noted that the assertive threat of injury was wholly contingent upon the occurrence of unforeseeable events. And that's the situation presented here. And so unless this court has any further questions, California would ask that its motion to dismiss for lack of standing be granted, and I would yield the balance of my time to my federal counterpart. Okay. Thank you. May it please the Court, my name is Michael Gray. I'm here on behalf of the federal defendants. There's no standing here to sue the federal defendants because Falconry has been delegated to California. Federal Falconry terminated in the state. No plaintiff holds a federal permit. The federal government's not conducting unannounced inspections in California. Because you've delegated that to the state. The state has chosen to allow Falconry, which it doesn't have to do. Hawaii, for example, does not allow Falconry. It's exercised a state prerogative to allow Falconry in its state, and as part of that has chosen, yes, to adopt regulations that allow these unannounced inspections. It's not just any regulations. It's federal regulations, correct? These are state regulations that are adopted. It's true they incorporate the federal language, but there's no requirement that the states incorporate the federal language verbatim. California chose to do so. Instead, the program sets a minimum, but California can adopt different, more restrictive measures for its Falconry program. Is one of those minimum requirements that they have these unwarranted searches? I think that's an open question that hasn't been tested. The federal regulation says that essentially Falconers will provide unannounced searches, but it doesn't provide consent to unannounced searches, but it doesn't require states to conduct searches without warrants, for example, and California didn't submit a program and said we want to have our program be one that we are going to get warrants before we conduct inspections and test whether that would comply with the federal regulations. So I don't think we know for purposes of this what would happen, which goes to the relief and why the case isn't redressable either, because if the court were to issue some order running against the federal government, against those regulations, it really would provide no additional relief. It would be sufficient relief to find that the California program was unconstitutional. They say, well, if you do that, then they may take away the full program, but that's entirely speculative and hasn't been tested at all here. And so where you don't have a current federal program, there's no federal searches ongoing, and where California is the one making the choices about how to conduct these searches, there's no federal requirement that they do this without warrants. They could choose to go do it. There's no injury here caused by the federal defendants, and an order running against the federal defendants wouldn't provide any redress to the plaintiffs. I guess I don't quite understand that. So if we focus again on the unconstitutional conditions claim and the requirement that you consent to these searches at the outset as a condition of getting your permit, that's part of federal law. That's part of the minimum things that federal law says states must do to be able to have a proper falconry program, right? Well, that's what I was saying. I'm not sure that that's been tested in any way. I mean, I understand they're actually conducting searches. We don't know. But the requirement that when somebody comes in and says, I want a falconry permit, and they have to sign and say, I agree to these searches, that is in the regulations. The federal regulation is to say, states, you must include this in your process. For unannounced searches, that is in the regulation, but we haven't had a state come into the federal government and say, for example, in order when we implement our falconry program, our unannounced searches will be conducted with warrants, which until the state does that, we don't know whether the Fish and Wildlife Service would conclude that that state program can be approved or not approved under the regulations. It's just a question that we don't know. Well, let me ask you this way. What would happen if a court were to strike down, as against California, this requirement that its falconry applicants make this agreement to consent to these searches? If a court were to strike that down, what would the federal government do about that? Because then the California system would be out of compliance with the federal requirements. Well, I think the federal government would first have to conclude whether the California system would be out of compliance. I don't think it's a given that the federal government would think, but it's speculative. How is it not a given where the regulations specifically say, state processes have to include this agreement to consent to these searches? Well, I guess that's to consent to unannounced searches. Again, I'm not sure that a state that said we're going to have a search program where we're going to get warrants first would automatically not comply with that. That would be a judgment that the Fish and Wildlife Service would have to make under the regulations. And I think it's entirely speculative if you struck down California's requirement here what the Fish and Wildlife Service would do. It's difficult for me to imagine that the Fish and Wildlife Service would find that a state program is out of compliance and undue. But not out of compliance in general. Out of compliance on this point, which is on the unwarranted searches. That's what it would be, out of compliance. Right, but it's the program as a whole that they are evaluating when they're issuing an approval to the state. On the Fish Force question on that point, what would the federal government do? Indicating that this portion of it, this is unconstitutional, unwarranted searches. I can't imagine the federal government would do anything other than respect the judgment of the court in California that those searches would be unconstitutional. Why do you think the searches are unconstitutional, per se? Why do I think they're unconstitutional? I don't. I'm responding to the hypothetical. Isn't the whole doctrine of the unconstitutional conditions dependent upon a finding or a conclusion that the condition is, in fact, unconstitutional and the condition here is a warrantless search? Undoubtedly, and if we get sent back, I think we have very strong arguments on the merits of this. But we're here on standing, and I'm assuming it for the purposes of answering the question. I guess I would just conclude by asking the court to affirm, since the federal government really is not doing anything here, this is a state program, a state prerogative that the state is carrying out. Thank you very much. Any other questions? All right, counsel. Your Honors, we're here on standing, and we'll argue the merits of whether these searches and seizures of properties and effects and structures that are within the enumerated property items of the Fourth Amendment are reasonable or unreasonable below. But here, this court need not find that these searches violate my client's Fourth Amendment rights to find that there is an injury here. And just looking at the before and after of my client Peter's scenario is instructive. Before he got his license, if a Fish and Game officer came to his house, knocked on his door, and asked to search, he had the right to exclude that officer from his property. He had the right to insist on a warrant, and that officer, if he searched, would be a trespasser. After licensure, that same Fish and Game officer, if he knocks on Peter's door, Peter can no longer exclude that officer from his private property. He can no longer demand a warrant. It's a criminal offense to refuse access. And that officer is essentially a licensee at common law with the right to enter his property for a specific purpose. The Supreme Court in a long line of cases, most recently in Cedar Point Nursery v. Hasid, said that the right to exclude others from private property is one of the most fundamental attributes of private property ownership. We can see here, through the before and the after of this licensing program, that there are legal injuries to defined rights, that there are burdens that are imposed on my clients every single June when they're required, as a condition of renewing their license, to agree to warrantless searches of their properties. The Supreme Court, in a case in 1917, that first articulated the unconstitutional conditions doctrine, talked about people like Peter as being between the rock and the whirlpool. My clients, every single June, have to decide whether they are going to object to this condition, refuse to sign the right of entry agreement, and in the process, they know what will happen. They'll be rejected their license. Peter will lose Ares, possibly never see him again. Or, they sign the agreements, they take the burden of losing their right to exclude their government, losing their right to demand a warrant, in order to continue a lifelong passion of falconry. My clients just want a chance to argue to the lower court that they should not be put between the rock and the whirlpool. This court does not need, and the court below, does not need a series of searches and seizures to look at. The Supreme Court, in a long line of cases, Ferguson v. City of Charleston, City of Los Angeles v. Patel, has looked at laws that authorize warrantless searches and decided whether those authorizations are constitutional. We ask for the opportunity to argue below that these regulations are unconstitutional. Thank you. All right. Thank you both. Well, thank you to all counsel for the helpful argument in Stavrionidakis v. United States Fish and Wildlife Service. That case is submitted, and we are concluded for this afternoon.
judges: THOMAS, FORREST, MENDOZA